**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RYAN KOLIS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No: 21-cv-11215-KAR |
| MAVIS TIRE SUPPLY LLC, *et al.*, | |
| Defendants. | |

## JOINT MOTION FOR APPROVAL OF FLSA RELEASE AND SETTLEMENT AGREEMENT

### 1.     Introduction

Plaintiffs, Ryan Kolis ("Kolis") and Joshua Lamb ("Lamb") (together "Plaintiffs") and Defendants, Mavis Tire Supply LLC ("Mavis") and Jim Johnson ("Johnson") (together "Defendants") (Plaintiffs and Defendants collectively as "Parties") file this Joint Motion for Approval of Settlement Agreement as to FLSA claims and request the Court approve the Parties' Settlement Agreements, attached hereto as Exhibit A.  The Parties agree that the settlement set forth in the Settlement Agreements is fair and reasonable and that no hearing before the Court is needed or requested.

### 2.     Procedural Background

Plaintiffs filed this lawsuit against Defendants, in which they have included claims under the Fair Labor Standards Act ("FLSA") for the alleged failure to pay due wages and overtime wages and the Massachusetts Wage Act (the "Wage Act") for the alleged failure to timely pay wages (Mass. Gen. Laws Ch. 149, §§ 148, 150, Ch. 151 § 1).  Following the filing of this lawsuit, Plaintiffs and Defendants exchanged correspondence and discovery before engaging in a mediation before a neutral third-party.

3.      **Factual Background**

Plaintiffs worked at the Mavis retail store located at 868 Dalton Avenue, Pittsfield, Massachusetts (the "Pittsfield Mavis Store") for over three years. Johnson served as a manager of the Pittsfield Mavis Store starting in 2019 through July 1, 2021. Plaintiffs allege that Defendants deducted a lunch break from Plaintiffs' time sheets, which governed the number of hours Defendants paid Plaintiffs per-week, and that they performed work during these breaks and that Defendants otherwise did not pay them for every hour worked. Having worked at the same location and for the same managers, both Plaintiffs had identical claims, but for the fact that Lamb was paid a slightly higher hourly rate than Kolis. Plaintiffs filed a timely complaint with the Massachusetts Attorney General's Office requesting permission to pursue a private right of action. Defendants deny Plaintiffs' allegations and maintain that Plaintiffs were paid for all hours worked and were otherwise were correctly paid in accordance with both federal and Massachusetts law during the entirety of their employment with Mavis.

Through their counsel, the Parties are familiar with the facts of the case and the legal issues raised by the pleadings.  Both before and during the litigation, the Parties conducted a thorough investigation into the merits of their respective claims and defenses. Accordingly, and through their counsel, the Parties have engaged in several in-depth settlement conferences, culminating in a full day mediation before an experienced, neutral third-party on April 22, 2022.

At the mediation, the Parties agreed upon a settlement to resolve all employment-related claims against Defendants, including their claims under the FLSA, in exchange for a payment to Lamb of $62,000 and $58,000 to Kolis. The settlement for Lamb includes a payment of $13,395.36 for single-measure wage damages, plus $26,790.72 for statutory penalties, and $21,813.92 for attorney's fees and costs.  The settlement for Kolis includes a payment of $12,506.47 for single-measure wage damages, plus $25,012.94 for statutory penalties, and $20,480.59 for attorney's fees

and costs.  The terms and conditions of the settlement reflected in the Settlement Agreement are a product of the Parties' negotiations.  The terms and ultimate amount of the settlement payment represent a reasonable compromise of the disputed issues.  The Parties agree that the certainty of settlement is better than the uncertain outcome of protracted litigation.

**4.      Argument**

Courts have held that the private settlement of FLSA claims requires the approval of either the Department of Labor or the district court.  See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir.2015) ("[S]tipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."); Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1353 (11th Cir.1982) (district court may enter a stipulated judgment after "scrutinizing the settlement for fairness").  The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, Inc., 679 F.2d at 1355.  Further, "[w]here a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." See Silva v. Miller, 307 Fed.Appx. 349 (11th Cir.2009) (holding that the FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement"). "In an individual FLSA action where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney's fees.' " Wolinsky v. Scholastic Inc., 900 F.Supp.2d 332, 336 (S.D.N.Y.2012)).

As per the factual record, this matter stems from a bona fide dispute over how many hours were actually worked by the Plaintiffs, and the proper interpretation of federal and Massachusetts

law.  All Parties agree that the settlement funds, including those moneys allotted to lost wages and attorney's fees, represent a fair and reasonable resolution to that dispute.  See Lynn's Food Stores, Inc., 679 F.2d at 1355.  All Parties are represented by counsel who reached the above-described settlement following several arm's-length negotiations regarding the merits of the claims, the possible range of damages, and the risks involved in litigating such a case.

**5.      Conclusion**

Based upon the foregoing, the Parties jointly believe the settlement terms are fair, reasonable, and adequate.  Accordingly, the Parties respectfully request that the Court grant this Joint Motion for Approval of the Settlement and enter an Order approving the settlement, allowing the Parties to file a joint stipulation of dismissal with prejudice as to all of Plaintiffs' claims within two weeks after entry of an Order approving the FLSA settlement and retaining jurisdiction over this case to enforce the Parties' Settlement Agreement.

Respectfully submitted,
Ryan Kolis and Joshua Lamb,
By Their Attorney,


/s/ Michael A. Rivkin
Christopher M. Hennessey (BBO # 654680)
Michael A. Rivkin (BBO # 697737)
COHEN KINNE VALICENTI & COOK LLP
28 North Street, 3rd Floor
Pittsfield, Massachusetts 01201
Phone:  (413) 443-9399
Facsimile:  (413) 442-9399
chennessey@cohenkinne.com
mrivkin@cohenkinne.com


Dated: June 3, 2022

Respectfully submitted,
Mavis Tire Supply LLC and
Jim Johnson,
By their attorneys


/s/ Douglas J. Hoffman
Douglas J. Hoffman (BBO# 640472)
Kathleen White (BBO# 705994)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Phone: 617-367-0025

hoffman@jacksonlewis.com


Dated:  June 3, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I, Christopher M. Hennessey, counsel of record for the Plaintiffs, Ryan Kolis and Joshua Lamb, in this action, do hereby certify that I have served a copy of the foregoing to all counsel of record, via ECF System, this 3rd day of June 2022.

*/s/Michael A. Rivkin*
Michael A. Rivkin

# EXHIBIT A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Mavis Tire Supply LLC** (referred to throughout this Agreement as "Mavis") and **Ryan Kolis** ("Kolis"). The term "Party" or "Parties" as used herein shall refer to Mavis, Kolis, or both, as may be appropriate.

1.    **Recitals.**

This Agreement is made with reference to the following facts:

(a)    Kolis was formerly employed by Mavis;

(b)    Kolis's last day of employment with Mavis was January 27, 2022 ("Separation Date");

(c)    On or about March 26, 2021, Kolis brought an action against Mavis in Pittsfield District Court, which was subsequently removed to and is now pending in United States District Court for the District of Massachusetts (Western Division) (the "Court") as *Ryan Kolis and Joshua Lamb v. Mavis Tire Supply LLC and Jim Johnson*, Case No.: Civil Action No. 3:21-cv-11215-KAR (the "Lawsuit"). In the Lawsuit, Kolis asserts claims for violations of the Fair Labor Standards Act; and

(d)    There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Kolis and Mavis have agreed, subject to the terms of this Agreement, to resolve any and all claims, known and unknown, asserted and unasserted, which Kolis has or may have against Mavis and/or Mavis's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof (including, but not limited to, Jim Johnson), both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2.    **Consideration/Indemnification for Tax Consequences and Liens.**

(a)    In consideration for Kolis signing this Agreement, and complying with its terms, Mavis agrees to pay the total gross sum of FIFTY-EIGHT THOUSAND AND NO/100 DOLLARS ($58,000) (the "Settlement Payment"), to be paid as follows:

(1)    One payment for alleged lost back pay and/or front pay and wages by check made payable to "Ryan Kolis" in the amount of TWELVE THOUSAND FIVE HUNDRED AND SIX AND 47/100 DOLLARS ($12,506.47), less applicable payroll/tax withholdings, for which Mavis shall issue an IRS Form W-2 to Kolis;

1

(2)     One payment for alleged emotional distress, liquidated and/or other non-wage damages by check made payable to "Ryan Kolis" in the amount of TWENTY-FIVE THOUSAND AND TWELVE AND 94/100 DOLLARS ($25,012.94), for which Mavis shall issue an IRS Form 1099-MISC to Kolis;

(3)     One payment for alleged attorneys' fees and costs by check made payable to "COHEN KINNE VALICENTI & COOK LLP" ("Kolis's Counsel") in the amount of TWENTY THOUSAND FOUR HUNDRED AND EIGHTY AND 59/100 DOLLARS ($20,480.59), for which an IRS Form 1099-MISC shall be issued to each of Kolis and Kolis's Counsel;

(b)     Kolis agrees that Kolis is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2(a)(2). Kolis understands and agrees Mavis is providing Kolis with no representations regarding tax obligations or consequences that may arise from this Agreement. Kolis, for Kolis and Kolis's dependents, successors, assigns, heirs, executors, and administrators (and Kolis's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Mavis or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Kolis or Kolis's Counsel pursuant to Paragraph 2(a) of this Agreement. Kolis agrees that Kolis shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Mavis or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)     Any settlement payments made by check set forth in this paragraph will be delivered to Kolis's Counsel, Cohen Kinne Valicenti & Cook LLP, at 28 North Street, 3rd Floor Pittsfield, Massachusetts 01201.

3.     **No Consideration Absent Execution of this Agreement.**

Kolis understands and agrees that Kolis would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Kolis's timely execution of this Agreement and the fulfillment of the promises contained herein.

4.     **Disbursal of Settlement Funds/Dismissal of Action.**

(a)     The settlement payments described in Paragraph 2(a) will be sent within thirty (30) business days after the latest of the following have occurred:

(1)     counsel for Mavis receives a copy of the Agreement signed by Kolis;

(2)     counsel for Mavis receives an executed W-9 Form from Kolis's Counsel;

(3)     counsel for Mavis receives an executed W-9 Form from Kolis; and

2

    (4)    approval of this Agreement by the Court, (or an Order issued by the Court holding that its approval is not necessary), and subsequent dismissal of the entire Lawsuit by both Plaintiffs with prejudice.

**5.**    **General Release, Claims Not Released and Related Provisions.**

    (a)    **General Release of All Claims.**  Kolis and Kolis's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Kolis has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- The Massachusetts Law Against Discrimination, G.L. c. 151B, as amended;
- The Massachusetts Equal Rights Act, G.L. c. 93, as amended;
- The Massachusetts Civil Rights Act, G.L. c. 12, as amended;
- The Massachusetts Privacy Statute, G.L. c. 214, § 1B, as amended;
- The Massachusetts Sexual Harassment Statute, G.L. c. 214, § 1C;

- The Massachusetts Wage Payment Statute, G.L. c. 149, §§ 148, 148A, 148B, 149, 150, 150A-150C, 151, 152, 152A, et seq.;
- The Massachusetts Wage and Hour laws, G.L. c. 151§1A et seq.;
- The Massachusetts Workers' Compensation Act, G.L. c. 152, § 75B;
- The Massachusetts Small Necessities Act, G.L. c. 149, § 52D;
- The Massachusetts Equal Pay Act, G.L. c. 149, § 105A-C;
- The Massachusetts Equal Rights for the Elderly and Disabled, G.L. c. 93, § 103;
- The Massachusetts AIDS Testing statute, G.L. c. 111, §70F;
- The Massachusetts Consumer Protection Act, G.L. c. 93A;
- Massachusetts Employment Leave for Victims and Family Members of Abuse, G.L. c. 149, §52E, as amended;
- The Massachusetts Earned Sick Time Law, M.G.L. c. 149, § 148C;
- The Massachusetts Paid Family and Medical Leave Act, M.G.L. c.175M et seq.
- Massachusetts Parental Leave Act, G.L. c. 149, § 105D;
- Massachusetts Age Discrimination Law, G.L. c. 149 §24 A et seq.;

3

- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b) **Claims Not Released.** Kolis is not waiving any rights Kolis may have to: (i) Kolis's own vested or accrued employee benefits under Mavis's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c) **Governmental Agencies.** Nothing in this Agreement prohibits, prevents, or otherwise limits Kolis from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Kolis's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Kolis agrees that if such an administrative claim is made, Kolis shall not be entitled to recover any individual monetary relief or other individual remedies.

(d) **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Kolis waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Mavis or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Kolis waives Kolis's right to a jury trial subject to applicable law.

6. **Confidentiality.**

(a)     Kolis confirms that prior to the execution of this Agreement, Kolis has not revealed its terms to any third parties. Kolis agrees, subject to the provisions of Section 4(a)(4) (Court approval) not to disclose any information regarding the underlying facts leading up, or the existence or substance of this Agreement, except to Kolis's spouse, tax advisor, an attorney with whom Kolis chooses to consult regarding Kolis's consideration of this Agreement. Kolis agrees that in the event Kolis discloses the terms of this Agreement to Kolis's spouse, tax advisor, or legal counsel, Kolis will instruct Kolis's spouse, tax advisor, or legal counsel not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television state or any future, current, or former employee, representative, agent, customer, creditor, or competitor of Releasees without the express written consent of Releasees. If inquiries arise concerning this Agreement, Kolis may only reply, "The matter has been resolved to everyone's satisfaction; there was no victory on either side," and shall make no other comment, except as required by law. Nothing in this Agreement has the purpose or effect of preventing Kolis from making truthful disclosures about alleged unlawful conduct.

4

7.     **Acknowledgements and Affirmations.**

(a)     Kolis affirms that Kolis has not filed, caused to be filed, or presently is a party to any claim against Mavis, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Kolis's rights under whistleblower laws or cause Kolis to disclose Kolis's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)     Kolis also affirms that Kolis has reported all hours worked as of the date Kolis signs this Agreement and, by virtue of the payments referred to herein, has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Kolis signs this Agreement and Kolis has been reimbursed for all necessary expenses or losses incurred by Kolis within the scope of Kolis's employment.  Kolis further affirms that Kolis has submitted expense reports for all necessary expenses or losses incurred by Kolis within the scope of Kolis's employment.  Kolis affirms that Kolis has been granted any leave to which Kolis was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c)     Kolis further affirms that Kolis has no active workers' compensation claims and has no known workplace injuries or occupational diseases.

(d)     Kolis also affirms that Kolis has not divulged any proprietary or confidential information of Mavis and will continue to maintain the confidentiality of such information consistent with Mavis's policies and Kolis's agreement(s) with Mavis and/or common law.  Under the federal Defend Trade Secrets Act of 2016, Kolis shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Kolis's attorney in relation to a lawsuit against Mavis for retaliation against Kolis for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)     Kolis further affirms that Kolis has not reported internally to Mavis any allegations of wrongdoing by Mavis or its officers, including any allegations of corporate fraud, and Kolis has not been retaliated against for reporting or objecting to any such allegations internally to Mavis.

(f)     Kolis shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Mavis or an Releasee, including without limitation any of Mavis's subsidiaries, under any circumstances because of, among other things, irreconcilable differences with Mavis.  Kolis agrees that, if Kolis accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Kolis's employment or work engagement immediately and Kolis shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(g)     Kolis affirms that all of Mavis's decisions regarding Kolis's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(h)     Kolis and Mavis acknowledge Kolis's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

(i)     Kolis represents, warrants and acknowledges that there are bona fide legal arguments and disputes between the Mavis and Kolis, and that the consideration described in Paragraph 2 reflects a full compromise for any such claims, including claims under the Fair Labor Standards Act (or applicable state or local wage law) as of the date of execution of the Agreement. Accordingly, the Parties have not found it necessary for the United States Department of Labor (the "USDOL") or any other federal, state or local governmental department or agency to supervise or approve this Agreement, but the Parties agree that if a USDOL or other proceeding is required to approve this Agreement, the Parties shall seek approval and enforcement hereof, including filing a motion or request for approval of this settlement as full consideration for the asserted claim from a court of competent jurisdiction and/or the USDOL(or applicable state or local agency). Further, if any claim or portion thereof is not subject to release, to the extent permitted by law, Kolis and Kolis's heirs, executors, administrators, and successors, waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which any of the Releasees (as defined herein) is a party.  If any claim is not barred by this Agreement, all monies paid hereunder shall be set-off against any relief or recovery.  Consistent with this Agreement, in the event any class or collective claim is brought against Releasees, which includes or may include Kolis and/or Kolis's heirs, executors, administrators, and successors, immediately upon learning of Releasee's inclusion, Kolis and/or Kolis's heirs, executors, administrators, and successors, as applicable, shall withdraw therefrom without obtaining or accepting any relief or recovery.

(j)     Kolis acknowledges that – to the extent set forth in the General Release of All Claims section above – this Agreement contains a release of any and all claims Kolis may have under the Massachusetts Wage Act and that this Agreement is intended to resolve any and all disputes related to wages, commissions, or other compensation.

**8.      Return of Property.**

Except as provided otherwise in this Agreement or by law, Kolis affirms that Kolis has returned all of Mavis's property, documents, and/or any confidential information in Kolis's possession or control.

Kolis also affirms that Kolis is in possession of all of Kolis's property that Kolis had at Mavis's premises and that Mavis is not in possession of any of Kolis's property.

**9.      Medicare Secondary Payer Rules.**

As a term of this Agreement, the parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules.  In doing so, Kolis affirms that as of the date

Kolis signs this Agreement, Kolis is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Kolis under this settlement, Kolis agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Kolis, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Kolis is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

10. **Governing Law and Interpretation**.

This Agreement shall be governed and conformed in accordance with the laws of Massachusetts without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Kolis agrees to sign a replacement release in a form provided by Kolis.

11. **Nonadmission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

12. **Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

13. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Mavis and Kolis, which shall remain in full force and effect according to their terms. Kolis acknowledges that Kolis has not relied on any representations, promises, or agreements of any kind made to Kolis in connection with Kolis's decision to accept this Agreement, except for those set forth in this Agreement.

14. **Counterparts and Signatures**.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed

7

or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

**15.**     **Mutual Negotiation.**

This Agreement was the result of negotiations between the Parties and their respective counsel.  In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

**16.**     **Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Kolis or any party acting on Kolis's behalf.

**KOLIS ACKNOWLEDGES THAT KOLIS HAS HAD A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT.  KOLIS FURTHER ACKNOWLEDGES THAT KOLIS HAS BEEN ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY KOLIS'S COUNSEL COHEN KINNE VALICENTI & COOK LLP, AND SO DOING, ENTERS INTO THIS AGREEMENT.**

**KOLIS AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.**

**KOLIS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS KOLIS HAS OR MIGHT HAVE AGAINST RELEASEES.**

8

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**RYAN KOLIS**

By: _____

Print
Name: _____Ryan Kolis_____

Date: ____5/26/22____

**MAVIS TIRE SUPPLY LLC**

By: _____
     Susanne Cairo
     Corporate Counsel

Date: ____05/26/2022____

4878-1230-0577, v. 1

9

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Mavis Tire Supply LLC** (referred to throughout this Agreement as "Mavis") and **Joshua Lamb** ("Lamb").  The term "Party" or "Parties" as used herein shall refer to Mavis, Lamb, or both, as may be appropriate.

1.   **Recitals.**

This Agreement is made with reference to the following facts:

(a)   Lamb was formerly employed by Mavis;

(b)   Lamb's last day of employment with Mavis was January 27, 2022 ("Separation Date");

(c)   On or about March 26, 2021, Lamb and another Plaintiff, Ryan Kolis ("Kolis"), brought an action against Mavis and others in Pittsfield District Court, which was subsequently removed to and is now pending in United States District Court for the District of Massachusetts (Western Division) (the "Court") as *Ryan Kolis and Joshua Lamb v. Mavis Tire Supply LLC and Jim Johnson*, Case No.: Civil Action No. 3:21-cv-11215-KAR (the "Lawsuit"). In the Lawsuit, Lamb and Kolis assert claims for violations of the Fair Labor Standards Act and Massachusetts state law; and

(d)   There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Lamb and Mavis have agreed, subject to the terms contained in this Agreement, to resolve any and all claims, known and unknown, asserted and unasserted, which Lamb has or may have against Mavis and/or Mavis's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof (including, but not limited to, Jim Johnson), both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2.   **Consideration/Indemnification for Tax Consequences and Liens.**

(a)   In consideration for Lamb signing this Agreement, and complying with its terms, Mavis agrees to pay the total gross sum of SIXTY-TWO THOUSAND AND NO/100 DOLLARS ($62,000) (the "Settlement Payment"), to be paid as follows:

(1)   One payment for alleged lost back pay and/or front pay and wages by check made payable to "Joshua Lamb" in the amount of THIRTEEN THOUSAND THREE HUNDRED AND NINETY-FIVE AND 36/100 DOLLARS ($13,395.36), less applicable payroll/tax withholdings, for which Mavis shall issue an IRS Form W-2 to Lamb;

1

(2)     One payment for alleged emotional distress, liquidated and/or other non-wage damages by check made payable to "Joshua Lamb" in the amount of TWENTY-SIX THOUSAND SEVEN HUNDRED AND NINETY AND 72/100 DOLLARS ($26,790.72), for which Mavis shall issue an IRS Form 1099-MISC to Lamb;

(3)     One payment for alleged attorneys' fees and costs by check made payable to "COHEN KINNE VALICENTI & COOK LLP" ("Lamb's Counsel") in the amount of TWENTY-ONE THOUSAND EIGHT HUNDRED AND THIRTEEN AND 92/100 DOLLARS ($21,813.92), for which an IRS Form 1099-MISC shall be issued to each of Lamb and Lamb's Counsel;

(b)     Lamb agrees that Lamb is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2(a)(2). Lamb understands and agrees Mavis is providing Lamb with no representations regarding tax obligations or consequences that may arise from this Agreement. Lamb, for Lamb and Lamb's dependents, successors, assigns, heirs, executors, and administrators (and Lamb's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Mavis or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Lamb or Lamb's Counsel pursuant to Paragraph 2(a) of this Agreement. Lamb agrees that Lamb shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Mavis or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)     Any settlement payments made by check set forth in this paragraph will be delivered to Lamb's Counsel, Cohen Kinne Valicenti & Cook LLP, at 28 North Street, 3rd Floor, Pittsfield, Massachusetts 01201.

3.     **No Consideration Absent Execution of this Agreement.**

Lamb understands and agrees that Lamb would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Lamb's timely execution of this Agreement and the fulfillment of the promises contained herein.

4.     **Disbursal of Settlement Funds/Dismissal of Action.**

(a)     The settlement payments described in Paragraph 2(a) will be sent within thirty (30) business days after the latest of the following have occurred:

(1)     counsel for Mavis receives a copy of the Agreement signed by Lamb;

(2)     counsel for Mavis receives an executed W-9 Form from Lamb's Counsel;

(3)     counsel for Mavis receives executed W-4 and W-9 Forms from Lamb;

2

    (4)     approval of this Agreement by Court, (or an Order issued by the Court holding that its approval is not necessary), and subsequent dismissal of the entire Lawsuit by both Plaintiffs with prejudice; and

    (5)     the revocation period following the signing of this Agreement has expired.

**5.**    <u>**General Release, Claims Not Released and Related Provisions.**</u>

    (a)    <u>**General Release of All Claims.**</u>  Lamb and Lamb's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Lamb has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- The Massachusetts Law Against Discrimination, G.L. c. 151B, as amended;
- The Massachusetts Equal Rights Act, G.L. c. 93, as amended;
- The Massachusetts Civil Rights Act, G.L. c. 12, as amended;
- The Massachusetts Privacy Statute, G.L. c. 214, § 1B, as amended;
- The Massachusetts Sexual Harassment Statute, G.L. c. 214, § 1C;
- The Massachusetts Wage Payment Statute, G.L. c. 149, §§ 148, 148A, 148B, 149, 150, 150A-150C, 151, 152, 152A, et seq.;
- The Massachusetts Wage and Hour laws, G.L. c. 151§1A et seq.;
- The Massachusetts Workers' Compensation Act, G.L. c. 152, § 75B;
- The Massachusetts Small Necessities Act, G.L. c. 149, § 52D;
- The Massachusetts Equal Pay Act, G.L. c. 149, § 105A-C;
- The Massachusetts Equal Rights for the Elderly and Disabled, G.L. c. 93, § 103;
- The Massachusetts AIDS Testing statute, G.L. c. 111, §70F;
- The Massachusetts Consumer Protection Act, G.L. c. 93A;
- Massachusetts Employment Leave for Victims and Family Members of Abuse, G.L. c. 149, §52E, as amended;

3

- The Massachusetts Earned Sick Time Law, M.G.L. c. 149, § 148C;
- The Massachusetts Paid Family and Medical Leave Act, M.G.L. c.175M et seq.
- Massachusetts Parental Leave Act, G.L. c. 149, § 105D;
- Massachusetts Age Discrimination Law, G.L. c. 149 §24 A et seq.;

- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b)  **Claims Not Released.**  Lamb is not waiving any rights Lamb may have to: (i) Lamb's own vested or accrued employee benefits under Mavis's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c)  **Governmental Agencies.**  Nothing in this Agreement prohibits, prevents, or otherwise limits Lamb from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Lamb's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Lamb agrees that if such an administrative claim is made, Lamb shall not be entitled to recover any individual monetary relief or other individual remedies.

(d)  **Collective/Class Action Waiver and Jury Waiver.**  If any claim is not subject to release, to the extent permitted by law, Lamb waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Mavis or any other Releasee identified in this Agreement is a party.  Similarly, as to any such claim against any Releasee that is not otherwise released, Lamb waives Lamb's right to a jury trial subject to applicable law.

6.  **Confidentiality.**

(a)  Lamb confirms that prior to the execution of this Agreement, Lamb has not revealed its terms to any third parties.  Lamb agrees, subject to the provisions of Section 4(a)(4) (Court approval), not to disclose any information regarding the underlying facts leading up, or the existence or substance of this Agreement, except to Lamb's spouse, tax advisor, an attorney with whom Lamb chooses to consult regarding Lamb's consideration of this Agreement.  Lamb agrees that in the event Lamb discloses the terms of this Agreement to Lamb's spouse, tax advisor, or legal counsel, Lamb will instruct Lamb's spouse, tax advisor, or legal counsel not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television state or any future, current, or former employee,

4

representative, agent, customer, creditor, or competitor of Releasees without the express written consent of Releasees. If inquiries arise concerning this Agreement, Lamb may only reply, "The matter has been resolved," and shall make no other comment, except as required by law. Nothing in this Agreement has the purpose or effect of preventing Lamb from making truthful disclosures about alleged unlawful conduct.

7.   **Acknowledgements and Affirmations.**

(a)      Lamb affirms that Lamb has not filed, caused to be filed, or presently is a party to any claim against Mavis, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Lamb's rights under whistleblower laws or cause Lamb to disclose Lamb's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)      Lamb also affirms that Lamb has reported all hours worked as of the date Lamb signs this Agreement and, by virtue of the payments referred to herein, has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Lamb signs this Agreement and Lamb has been reimbursed for all necessary expenses or losses incurred by Lamb within the scope of Lamb's employment. Lamb further affirms that Lamb has submitted expense reports for all necessary expenses or losses incurred by Lamb within the scope of Lamb's employment. Lamb affirms that Lamb has been granted any leave to which Lamb was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c)      Lamb further affirms that Lamb has no active workers' compensation claims and has no known workplace injuries or occupational diseases.

(d)      Lamb also affirms that Lamb has not divulged any proprietary or confidential information of Mavis and will continue to maintain the confidentiality of such information consistent with Mavis's policies and Lamb's agreement(s) with Mavis and/or common law. Under the federal Defend Trade Secrets Act of 2016, Lamb shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Lamb's attorney in relation to a lawsuit against Mavis for retaliation against Lamb for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)      Lamb further affirms that Lamb has not reported internally to Mavis any allegations of wrongdoing by Mavis or its officers, including any allegations of corporate fraud, and Lamb has not been retaliated against for reporting or objecting to any such allegations internally to Mavis.

(f)      Lamb shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Mavis or any Releasee, including without limitation any of Mavis's subsidiaries, under any circumstances because of, among other things, irreconcilable differences with Mavis. Lamb agrees that, if Lamb

accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Lamb's employment or work engagement immediately and Lamb shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(g)     Lamb affirms that all of Mavis's decisions regarding Lamb's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(h)     Lamb and Mavis acknowledge Lamb's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

(i)     Lamb represents, warrants and acknowledges that there are bona fide legal arguments and disputes between the Mavis and Lamb, and that the consideration described in Paragraph 2 reflects a full compromise for any such claims, including claims under the Fair Labor Standards Act (or applicable state or local wage law) as of the date of execution of the Agreement. Accordingly, the Parties have not found it necessary for the United States Department of Labor (the "USDOL") or any other federal, state or local governmental department or agency to supervise or approve this Agreement, but the Parties agree that if a USDOL or other proceeding is required to approve this Agreement, the Parties shall seek approval and enforcement hereof, including filing a motion or request for approval of this settlement as full consideration for the asserted claim from a court of competent jurisdiction and/or the USDOL(or applicable state or local agency). Further, if any claim or portion thereof is not subject to release, to the extent permitted by law, Lamb and Lamb's heirs, executors, administrators, and successors, waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which any of the Releasees (as defined herein) is a party.  If any claim is not barred by this Agreement, all monies paid hereunder shall be set-off against any relief or recovery.  Consistent with this Agreement, in the event any class or collective claim is brought against Releasees, which includes or may include Lamb and/or Lamb's heirs, executors, administrators, and successors, immediately upon learning of Releasee's inclusion, Lamb and/or Lamb's heirs, executors, administrators, and successors, as applicable, shall withdraw therefrom without obtaining or accepting any relief or recovery.

(j)     Lamb acknowledges that – to the extent set forth in the General Release of All Claims section above – this Agreement contains a release of any and all claims Lamb may have under the Massachusetts Wage Act and that this Agreement is intended to resolve any and all disputes related to wages, commissions, or other compensation.

## 8.     **Return of Property.**

Except as provided otherwise in this Agreement or by law, Lamb affirms that Lamb has returned all of Mavis's property, documents, and/or any confidential information in Lamb's possession or control.

Lamb also affirms that Lamb is in possession of all of Lamb's property that Lamb had at Mavis's premises and that Mavis is not in possession of any of Lamb's property.

### 9. <u>Medicare Secondary Payer Rules.</u>

As a term of this Agreement, the parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules. In doing so, Lamb affirms that as of the date Lamb signs this Agreement, Lamb is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Lamb under this settlement, Lamb agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Lamb, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Lamb is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

### 10. <u>Governing Law and Interpretation</u>.

This Agreement shall be governed and conformed in accordance with the laws of Massachusetts without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Lamb agrees to sign a replacement release in a form provided by Lamb.

### 11. <u>Nonadmission of Wrongdoing.</u>

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

### 12. <u>Amendment.</u>

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

### 13. <u>Entire Agreement.</u> This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Mavis and Lamb, which shall remain in full force and effect according to their terms. Lamb acknowledges that Lamb has not relied on any

7

representations, promises, or agreements of any kind made to Lamb in connection with Lamb's decision to accept this Agreement, except for those set forth in this Agreement.

## 14. Counterparts and Signatures.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

## 15. Mutual Negotiation.

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

## 16. Third Party Beneficiaries.

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Lamb or any party acting on Lamb's behalf.

LAMB IS ADVISED THAT LAMB HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. LAMB ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO LAMB'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY LAMB'S COUNSEL COHEN KINNE VALICENTI & COOK LLP, AND SO DOING, ENTERS INTO THIS AGREEMENT.

LAMB MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH LAMB SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO SUSANNE CAIRO (SCAIRO@MAVISTIRE.COM), CORPORATE COUNSEL, 358 SAW MILL RIVER ROAD, MILLWOOD, NEW YORK 10546 AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE RECEIVED BY SUSANNE CAIRO OR HIS/HER DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER LAMB SIGNS OR ENTERS INTO THIS AGREEMENT.

LAMB AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.

LAMB FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS LAMB HAS OR MIGHT HAVE AGAINST RELEASEES.

8

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**JOSHUA LAMB**                              **MAVIS TIRE SUPPLY LLC**

By: _____              By: _____
                                                Susanne Cairo
Print                                           Corporate Counsel
Name: __Josh Lamb_____
                                            Date: __05/26/2022_____

Date: __5-26-22_____

4870-7952-9502, v. 2

9